UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAVERNE TATE,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

Civil Action No. 12-10157

HON. STEVEN J. MURPHY, III
U.S. District Judge
HON. R. STEVEN WHALEN
U.S. Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiff Laverne Tate brings this action under 42 U.S.C. § 405(g), challenging a final decision of Defendant Commissioner denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Doc. #11] be DENIED and that Plaintiff's Motion for Summary Judgment [Doc. #9] be GRANTED, remanding this case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

On August 10, 2009, Plaintiff filed applications for DIB and SSI, alleging an onset of disability date of April 20, 2006 (Tr. 139-147, 148-150). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on June 8, 2011 in Livonia, Michigan (Tr. 31).

Administrative Law Judge ("ALJ") B. Lloyd Blair presided. Plaintiff, represented by Heidi Walkon, testified, (Tr. 35-49), as did Vocational Expert ("VE") Michelle Robb (Tr. 49-52). On July 6, 2011, ALJ Blair determined that although Plaintiff was unable to perform her past relevant work, she was capable of a range of unskilled, light work (Tr. 20-22). On December 12, 2011, the Appeals Council denied review of the claim (Tr. 2-5). Plaintiff filed for judicial review of the final decision on January 13, 2012.

## BACKGROUND FACTS

Plaintiff, born April 18, 1957, was 54 when the ALJ issued his decision (Tr. 22, 139). Her application for benefits alleges disability as a result of diabetes, back problems, hypertension (resulting in vision problems) and depression (Tr. 193). She left school after eighth grade and worked previously as an injection molder (Tr. 194, 197).

### A. Plaintiff's Testimony

Plaintiff testified that she stood 5'7 ½" and weighed 220 pounds (Tr. 35). Plaintiff, stated that she quit school after eighth grade and had started but not completed a GED (Tr. 36). Plaintiff reported that her last job, performing the work of a machine operator, ended when the job was terminated (Tr. 36). She collected 26 weeks of unemployment benefits after her last day of work (Tr. 37-38). She stated that the machine operator position required her to lift at least 80 pounds and stay on her feet for most of the shift (Tr. 37). She stated that she took a fall at work in the period before she was terminated but "hung in there" until the job ended (Tr. 38).

Plaintiff stated that aside from back pain, she experienced diabetes and uncontrolled hypertension (Tr. 38). She indicated that she had undergone extensive physical therapy (Tr. 38). She stated that when she first experienced back pain, she declined a doctor's recommendation to

consider back surgery (Tr. 39). She stated that at present, her back pain was constant, adding that it radiated to her hips and legs (Tr. 40). On a scale of one to ten, she rated her current back pain (with medication) at level "seven" (Tr. 40). She alleged the side effect of drowsiness from her pain and blood pressure medications (Tr. 41). She testified that she experienced knee pain for the last six months, but denied that knee surgery had been recommended (Tr. 42). She rated her knee pain at level "eight" (Tr. 42). She stated that she required the use of a cane "off and on" for the last 18 months (Tr. 42). Plaintiff stated that she had been diagnosed with diabetes in 2006, noting that she took medication for the condition (Tr. 43). She denied inpatient hospital treatment, emergency room visits, smoking, or alcohol use (Tr. 44). She stated that she currently lived in a two-story home with her husband and two children (Tr. 44). She denied performing cooking, yard work, or laundry chores (Tr. 45). She stated that her leisure time was spent watching television (Tr. 45). She denied attending church, school events, or social organizations (Tr. 45).

Plaintiff testified that on a typical day, she arose at 10:00 to 10:30 a.m., showered (with assistance), took her medication, then spent the rest of the day in her recliner (Tr. 46). She stated that lately, back and knee problems obliged her to "crawl," rather than walk upstairs (Tr. 46). She denied the ability to bend, squat, or lift more than five pounds (Tr. 46). She stated that she was unable to stand for more than 15 minutes or sit for more than 30 (Tr. 46). She estimated that she was able to walk for up to 30 minutes (Tr. 47).

In response to questioning by her attorney, Plaintiff reiterated that she required multiple naps each day (Tr. 47). She stated that her waking time was spent sitting in a recliner because she had "no strength" (Tr. 47). In addition to back pain, she alleged that she experienced back spasms once

or twice every day (Tr. 48). She stated that she coped with pain by stretching, applying heat, and using pillows to elevate her knees and back (Tr. 48).

    **B.**    **Medical Evidence**

### 1. Treating Sources

An October, 2006 chest x-ray was unremarkable (Tr. 279). The following month, treating notes by Mansour Fiaz, M.D. noted an unremarkable gait and station (Tr. 262). November, 2008 and May, 2009 treating records note that Plaintiff complained of back pain (Tr. 250, 252).

In October, 2009, Plaintiff complained of back pain radiating into her left leg (Tr. 287). An October 13, 2009 MRI of the lumbar spine showed a "marked loss of disc height," and "posterior broad-based herniation" impinging on the right L5 nerve root (Tr. 285). In April, 2010, Fadi Alali, M.D. noted Plaintiff's complaints of back and bilateral hip pain (Tr. 324, 326). Notwithstanding to October 13th report, he noted that an MRI of the spine had been done recently, but did not know the results[1] (Tr. 324). Plaintiff exhibited reduced strength and muscle tone in the lower extremities (Tr. 326).

In May, 2010, an x-ray of the lumbar spine showed "severe disc height loss at L4-L5 with "vacuum disc phenomenon" and moderate arthropathy (Tr. 315, 321). In June, 2010, Dr. Alali, noting that he had been treating Plaintiff for two months, gave her a "fair" prognosis due to lower back and leg pain (Tr. 310). He found that Plaintiff was unable to lift more than five pounds (Tr. 310). He found that Plaintiff was unable to stand or walk for more than 10 minutes at a time or for more than one hour total in an eight-hour work day (Tr. 311). In addition, he found that Plaintiff was unable to sit for more than one hour at a time with a maximum of six hours each day (Tr. 311).

---

[1] His handwritten notes read "had MRI spine recently - ? result" (Tr. 324).

He opined that symptoms of lower back pain would require unscheduled breaks five times each day for 30 minutes each (Tr. 311). Physical therapy intake notes from the same month state that Plaintiff exhibited "emotional stress" regarding her physical limitations (Tr. 332, 343).

Physical therapy progress notes from the following month show that Plaintiff continued to experience severe lumbar pain (Tr. 331, 348). She reported continued limitations in the ability to perform household chores (Tr. 331). The following month, Plaintiff exhibited increased strength, but only temporary reduction in pain (Tr. 349). September, 2010 discharge notes state that Plaintiff found light housekeeping and squatting and kneeling "very difficult" (Tr. 359). Plaintiff found turning over in bed "somewhat difficult" (Tr. 359).

## 2. Non-Treating Sources

In November, 2009, E. Montasir, M.D. examined Plaintiff on behalf of the SSA (Tr. 289-291). Plaintiff reported that her back pain radiated into both thighs (Tr. 289). Dr. Montasir observed that Plaintiff's diabetes was "reasonably controlled" (Tr. 289). He stated (erroneously) that the MRI of the lumbar spine from the previous month "showed a question of several bulging discs, but no herniation" (Tr. 289). Dr. Montasir observed that Plaintiff exhibited a normal gait and was able to tandem walk (Tr. 290). He noted that she complained of "pain all over, particularly in the lower back" (Tr. 290). Plaintiff exhibited some difficulty squatting (Tr. 291). Her manipulative abilities were deemed unimpaired (Tr. 291-292). Dr. Montasir found that Plaintiff "should be able to work as far as her physical condition is concerned," but noted that she would be unable to walk for more than three blocks or stand for more than one hour (Tr. 291).

A Physical Residual Functional Capacity Assessment performed the same month found that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an

eight-hour workday, and push and pull without limitation (Tr. 299). The postural limitations consisted of frequent (as opposed to *constant*) balancing, kneeling, crawling, and ramp/stair climbing; occasional stooping and crouching; and a preclusion on the climbing of all ladders, ropes, and scaffolds (Tr. 300). The Assessment found the absence of manipulative, visual, or communicative limitations (Tr. 301-302). Plaintiff's environmental limitations were limited to avoiding all "hazards" (Tr. 302). The non-examining source found that while Plaintiff's condition "may cause some functional limitation, the extent of limitation as alleged is not supported by the findings . . ." (Tr. 303).

### C. Vocational Expert

VE Michelle Robb classified Plaintiff's former work as a press operator as unskilled and exertionally medium (heavy as described by Plaintiff)[2] (Tr. 45). The ALJ then posed the following question to the VE:

> I'd like to assume a hypothetical individual who can meet the demands of light work. The individual should never use ladders, scaffolds or ropes; should only as occasionally stoop or crouch; should avoid all exposure to hazards, including dangerous and unprotected machinery or work at unprotected heights. In your opinion, could such an individual do the claimant's past relevant work? (Tr. 50).

The VE responded that the above-stated limitations would prevent the hypothetical individual from performing Plaintiff's past relevant work but did not preclude the work of a food prep worker (4,800

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

in the regional economy); housekeeper, (8,700); and information clerk (2,600) (Tr. 50). The VE stated that if the above-limited individual also required a sit/stand "at will" option, she could perform the work of a general office clerk (5,200); information clerk (1,300); and bench assembler (3,800) (Tr. 51). The VE stated that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") except for the sit/stand information, which was based on her own professional experience (Tr. 51).

In response to questioning by Plaintiff's counsel, the VE testified that if the hypothetical individual were limited to walking or standing for only one hour a day, the job findings regarding the positions of office clerk, information clerk, and bench assembler would not be affected (Tr. 52). The VE stated that if the individual required a total of two-and-a-half-hours of break time every day, all work would be precluded (Tr. 52).

### D.     The ALJ's Decision

Citing the medical transcript, ALJ Blair found that although Plaintiff experienced the severe impairments of "obesity; degenerative disc disease of the low back; knee pain; diabetes; and hypertension," none of the conditions met or medically equaled one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 16-17). Consistent with the hypothetical limitations posed to the VE, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") for light work with the following additional limitations:

> [S]he must never use ladders, scaffolds, or ropes; may occasionally stoop or crouch; should avoid all exposure to hazards including dangerous and unprotected machinery or heights; and requires a sit/stand at will option (Tr. 17).

Adopting the VE's job findings, he found that although Plaintiff was unable to perform her past relevant work, she could work as a general office clerk, information clerk, and bench assembler (Tr. 21).

The ALJ discounted Plaintiff's allegations of disability, citing her November, 2009 admission that her diabetes was "reasonably controlled" (Tr. 18). He stated (erroneously) that the October, 2009 MRI showed disc bulging "but no herniation" (Tr. 18). He observed that Plaintiff had not sought emergency treatment or been hospitalized in the past year for any condition (Tr. 19). The ALJ rejected Dr. Alali's June, 2010 opinion that Plaintiff was unable to perform even sedentary work, noting that Dr. Alali had been treating her for less than two months at the time the assessment was made (Tr. 19).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must

examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## **ANALYSIS**

Plaintiff makes three main arguments in favor of remand. *Plaintiff's Brief* at 6-13, *Docket #9.* First, she argues that substantial evidence does not support the ALJ's finding that she could perform exertionally light work. *Id.* at 6-7. She makes a second, overlapping argument that the ALJ erred by failing to accept her allegations of physical limitation. *Id.* Third, Plaintiff argues that the

ALJ erred by discounting Dr. Alali's June, 2010 opinion that she was unable to perform even sedentary work. *Plaintiff's Brief* at 7-12.

The record shows that the ALJ discussed the rationale for his inclusion of certain limitations in the RFC as required by SSR 96-8p (Tr. 18-19). His credibility analysis considered Plaintiff's allegations of functional limitation and went on to explain his reasons for accepted some of her claims and rejecting others (Tr. 18). *See* SSR 96-7p. Likewise, the ALJ articulated his reasons for rejecting Dr. Alali's June, 2010 opinion, noting that the "treating source" had only treated Plaintiff for two months (Tr. 19, 310-311). He also stated that Dr. Alali failed to support his assessment with clinical findings[3] (Tr. 19); 20 C.F.R. § 404.1527(c)(2).

However, the ALJ's otherwise thorough analysis is critically undermined by one significant misstatement of the record. He stated that "[a]n MRI of October 2009 showed a possibility of several bulging discs, but no herniation"[4] (Tr. 18). However, the October 13, 2009 MRI cited by the ALJ clearly showed a "posterior broad-based herniation" impinging on the right L5 nerve root (Tr. 285). The difference between a bulging disc and a herniated disc is significant. A bulging disc "is considered part of the normal aging process," whereas a herniated disc "results when a crack in

---

[3]

"If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion." *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2).

[4]The misstatement appears to be based on Dr. Montasir's earlier, incorrect finding that the October, 2009 MRI showed disc bulging but no herniation (Tr. 289).

the tough outer layer of cartilage allows some of the softer inner cartilage to protrude out of the disc."[5] While a bulging disc is generally asymptomatic, symptoms of a herniated disc of the lower back include "intense pain" in the buttocks, thigh, and lower leg; "numbness or tingling;" and lower extremity weakness.[6] Thus, the MRI supports Plaintiff's testimony and her reports to various treating and examining sources that she experienced constant back pain radiating into her hips and legs and was incapable of lifting more than five pounds (Tr. 40, 46, 287, 324, 326, 331, 348, 359).

The erroneous "bulging, but no herniation" finding also clouds other portions of the administrative findings. The ALJ gave "significant weight" to Dr. Montasir's one-time treating findings because they were "consistent with the medical evidence" (Tr. 19). However, Dr. Montasir's "findings" were based on the same incorrect statement that the MRI showed bulging but no herniation (Tr. 285, 289). While Dr. Montasir observed that Plaintiff could get on and off the examination table and "managed to do tandem walk," his conclusion that she "should be able to work" was based, at least in part, on the inaccurate finding that Plaintiff's claims of pain and limitation were not supported by the objective evidence (Tr. 289, 291). They clearly were.

As to the treating physician analysis, the ALJ's finding that Dr. Alali's opinion was entitled to limited weight "because it [was] not fully supported by objective medical findings" founders on the same incorrect interpretation of the October, 2009 MRI (Tr. 19). The ALJ's citation to a May, 2010 x-ray showing no evidence of fracture does not cure the errors created by his misreading of

---

[5]http://www.mayoclinic.com/health/bulging-disk/AN00272 (last visited February 22, 2013).

[6]http://www.mayoclinic.com/health/herniated-disk/DS00893/DSECTION=symptoms (last visited February 22, 2013).

the MRI report (Tr. 18). In contrast to MRIs, x-rays cannot be used to detect herniated discs, but rather, "to rule out other causes of back pain, such as an infection, tumor, spinal alignment issues or a broken bone."[7]

Finally, although the ALJ discounted Plaintiff's allegations on the basis that she had not undergone steroid injections for back pain relief (Tr. 19), the medical records do not show that Plaintiff visited any physician between the time the October, 2009 MRI was taken and when she sought treatment with Dr. Alali the following May. Moreover, Dr. Alali's treating notes suggest that he never received a copy of the MRI report and was thus unaware that it showed a broad-based herniation impinging on a nerve root. That being the case, why would he order steroid injections? *See* fn 1, above, citing Tr. 324.

Because Plaintiff has shown a strong but not "overwhelming" case for disability, her case should be remanded for further administrative proceedings rather than an award of benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994). However, a finding that Plaintiff , who was over 50 at the time of the ALJ's decision, is limited to sedentary work would mandate a finding of disability. 20 C.F.R., Part 404, Subpart P, Appendix 2, Table No. 1, Rule 201.14. As such, a remand on the basis of the above-discussed errors is particularly warranted for careful reconsideration of Plaintiff's claim.

---

[7]http://www.mayoclinic.com/health/herniated-disk/DS00893/DSECTION=tests-and-diagnosis (last visited February 22, 2013).

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Doc. #11] be DENIED and that Plaintiff's Motion for Summary Judgment [Doc. #9] be GRANTED, remanding this case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

**s/ R. Steven Whalen**
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: February 25, 2013

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on February 25, 2013.

                                                  Johnetta M. Curry-Williams
                                                  Case Manager